## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SHALOM GOLDSTEIN** | ) | |
| | ) | |
| **RABBI SIMCHA GOLDSTEIN** | ) | |
| | ) | |
| **SARAH B GOLDSTEIN, individually and as** | ) | |
| **parent and natural guardian of P.G., a minor, T.G.,** | ) | |
| **a minor, and Y.G., a minor** | ) | |
| | ) | Civil Action No. |
| **SHAINA KUTTEN** | ) | |
| | ) | |
| **SHIMON GOLDSTEIN** | ) | |
| | ) | |
| **YECHEZKAL SHRAGA GOLDSTEIN** | ) | |
| | ) | |
| **AVROHOM DAVID GOLDSTEIN** | ) | |
| | ) | |
| **HENDEL LEZER** | ) | |
| | ) | |
| **DOVY GOLDSTEIN** | ) | |
| | ) | |
| **CHAYA CHANA HOFFMAN** | ) | |
| | ) | |
| **YAAKOV YOSEF GOLDSTEIN** | ) | |
| | ) | |
| **BAS-SHEVA GOLDSTEIN  and** | ) | |
| | ) | |
| **MOISHE GOLDSTEIN** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **THE ISLAMIC REPUBLIC OF IRAN; THE** | ) | |
| **IRANIAN MINISTRY OF INFORMATION AND** | ) | |
| **SECURITY; THE IRANIAN REVOLUTIONARY** | ) | |
| **GUARDS CORPS** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs, Shalom Goldstein, Rabbi Simcha Goldstein,  Sarah B Goldstein; individually and as parents and natural guardians of P.G., a minor, T.G., a minor; and Y.G., a minor, Shaina Kutten, Shimon Goldstein, Yechezkal Shraga Goldstein, Avrohom David Goldstein, Hendel Lezer, Dovy Goldstein, Chaya Chana Hoffman, Yaakov Yosef Goldstein, Bas-Sheva Goldstein, and Moishe Goldstein, by and through their undersigned counsel, respectfully bring this action against the Islamic Republic of Iran; the Iranian Ministry of Information and Security; and the Iranian Revolutionary Guards Corps, jointly and/or severally, and allege as follows:

1. This action is brought by Plaintiffs for serious injury and emotional distress suffered as a result of the August 19, 2003 terrorist attack on a public passenger bus in Jerusalem, Israel.  The bombing was carried out by Hamas, a terrorist organization in which Defendants provided material support or resources including financial support, cover, sanctuary, technical assistance, explosive devices, and training.

## JURISDICTION AND VENUE

2. Plaintiffs bring this action pursuant to the Anti-Terrorism Amendments to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq.

3. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1330(a), 1331, and 1605A.

4. Defendants are subject to suit in the courts of the United States pursuant to 28 U.S.C. § 1605A, an exception to the Foreign Sovereign Immunities Act permitting lawsuits against foreign state sponsors of terror, for acts of torture, extrajudicial killings, and other terrorist actions committed by said states and their agents.

5. Pursuant to 28 U.S.C. § 1605A, jurisdiction is proper where either the injured or

deceased or an immediate relative claimant was a United States national at the time of the terrorist attack in question.

6.     While acting within the scope of their employment or office, agents, employees and officials of the Islamic Republic of Iran ("Iran") provided financing, technical know-how and tactical training that allowed Hamas to plan, implement and carry out the August 19, 2003 terrorist attack.  This qualifies as material support as it is defined under 28 U.S.C. § 1605A.

7.     Plaintiff, Shalom Goldstein, was injured in the August 19, 2003 suicide bombing and was a U.S. national living in Jerusalem, Israel at the time of the bombing.  All other Plaintiffs are immediate relatives of, Shalom Goldstein, and were United States nationals at the time of the attack.

8.     Private actions for personal injury and related torts brought by Plaintiffs against foreign state sponsors of terrorism under 28 U.S.C. § 1605A(c) are uniquely and wholly Federal versions of what are traditionally state-law causes of action.  These purely Federal tort actions were signed into law on January 22, 2008.  Cf. P.L. 110-181 § 1083 (2008).

9.     Venue in this Court is proper in accordance with the provisions of 28 U.S.C. § 1391(f)(4), which provides in pertinent part that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

10.    Plaintiffs' action is "related" to the matter of *Ora Cohen, et al. v. The Islamic Republic of Iran*, Case No. 12-cv-1496 (CRC), as it arises out of the same act or incident.  The *Cohen* matter was timely commenced in this Court on September 10, 2012.

## PLAINTIFFS

11.    Plaintiff, Shalom Goldstein, is a United States citizen who was nineteen (19) years old at the time of the August 19, 2003 attack.  Shalom Goldstein suffered physical injuries

and severe emotional distress as a result of the August 19, 2003 attack.

12.     Plaintiff, Rabbi Simcha Goldstein, is and was a United States citizen at the time of the August 19, 2003 attack and is the father of Shalom Goldstein.  Rabbi Simcha Goldstein brings this action in his own right for his loss of society and severe emotional distress.

13.     Plaintiff, Sarah B Goldstein, is a United States citizen and is the mother of Shalom Goldstein.  Plaintiff Sarah B. Goldstein brings this action in her own right for her loss of society and severe emotional distress.

14.     Plaintiff, P.G., a minor, is and was a United States citizen at the time of the August 19, 2003 attack and is the sister of Shalom Goldstein. P.G. brings this action in her own right for her loss of society and severe emotional distress.

15.     Plaintiff, T.G., a minor, is and was a United States citizen at the time of the August 19, 2003 attack and is the sister of Shalom Goldstein. T.G. brings this action in her own right for her loss of society and severe emotional distress.

16.     Plaintiff. Y.G., a minor, is a United States citizen and was prematurely born shortly after the attack.  Y.G. has suffered damages, including severe emotional distress, as a direct and proximate result of the August 19, 2003 attack.

17.     Plaintiff, Shaina Kutten, is and was a United States citizen at the time of the August 19, 2003 attack and is the sister of Shalom Goldstein. Shaina Kuggen brings this action in her own right for her loss of society and severe emotional distress..

18.     Plaintiff, Shimon Goldstein, is and was a United States citizen at the time of the August 19, 2003 attack and is the brother of Shalom Goldstein. Shalom Goldstein suffered brings this action in his own right for his loss of society and severe emotional distress..

19.     Plaintiff, Yechezkal Shraga Goldstein, is and was a United States citizen at the

time of the August 19, 2003 attack and is the brother of Shalom Goldstein. Yechezkal Shraga Goldstein brings this action in his own right for his loss of society and severe emotional distress.

20.     Plaintiff, Avrohom David Goldstein, is and was a United States citizen at the time of the August 19, 2003 attack and is the brother of Shalom Goldstein. Avrohom David Goldstein brings this action in his own right for his loss of society and severe emotional distress.

21.     Plaintiff, Hendel Lezer, is and was a United States citizen at the time of the August 19, 2003 attack and is the sister of Shalom Goldstein. Hendel Lezer brings this action in her own right for her loss of society and severe emotional distress.

22.     Plaintiff, Dovy Goldstein, is and was a United States citizen at the time of the August 19, 2003 attack and is the brother of Shalom Goldstein. Dovy Goldstein brings this action in his own right for his loss of society and severe emotional distress.

23.     Plaintiff, Chaya Chana Hoffman, is and was a United States citizen at the time of the August 19, 2003 attack and is the sister of Shalom Goldstein. Chaya Chana Hoffman brings this action in her own right for her loss of society and severe emotional distress.

24.     Plaintiff, Yaakov Yosef Goldstein, is and was a United States citizen at the time of the August 19, 2003 attack and is the brother of Shalom Goldstein. Yaakov Yosef Goldstein brings this action in his own right for his loss of society and severe emotional distress.

25.     Plaintiff, Bas-Sheva Goldstein, is and was a United States citizen at the time of the August 19, 2003 attack and is the sister of Shalom Goldstein. Ba-Sheva Goldstein brings this action in her own right for her loss of society and severe emotional distress.

26.     Plaintiff, Moishe Goldstein, is and was a United States citizen at the time of the August 19, 2003 attack and is the brother of Shalom Goldstein. Moishe Goldstein brings this action in his own right for his loss of society and severe emotional distress.

**DEFENDANTS**

27.     Defendant Islamic Republic of Iran ("Iran") is a foreign state within the meaning of 28 U.S.C. § 1391(f) and 1603(a).

28.     At all times relevant hereto, Defendant Iran was designated a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A, the Export Administration Act of 1979, 50 U.S.C. App. § 2405 (j), and the Foreign Assistance Act of 1961, 22 U.S.C. § 2371.

29.     Defendant Iran has been found to be liable as a state sponsor of international terrorism under 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605A for terrorist attacks committed by Hamas in various cases before this Court including *Bennett v. Islamic Republic of Iran*, 507 F. Supp. 2d 117 (D.D.C. 2007); *Goldberg-Botvin v. Islamic Republic of Iran*, 938 F. Supp. 2d 1 (D.D.C. 2013); and *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379 (D.D.C. 2015).

30.     Iran, through its officials, officers, agents and employees including the Iranian Ministry of Information and Security, and Iranian Revolutionary Guard Corps, provided material support and resources to Hamas both directly and through its surrogate, Hezbollah. The support provided by Iran to Hamas assisted in or contributed to the preparation and execution of the plans that culminated in the August 19, 2003 terrorist attack.

31.     Defendant Iranian Ministry of Information and Security ("MOIS") is an agency of Defendant Iran responsible for providing the military and intelligence services through which Iran trained, supported, and otherwise guided and directed the terrorist organizations responsible for causing Plaintiffs' injuries and trauma as described hereinafter.

32.     Defendant Iranian Revolutionary Guards Corps ("IRGC"), by and through its Quds Force Division ("Quds"), is an agency of Defendant Iran, and like Defendant MOIS, is responsible for providing the military and intelligence services through which Iran trained,

supported, and otherwise guided and directed terrorist organizations, including Hamas.

## HAMAS

33.     Harakat al-Muqawamah al-Islamiyya is Arabic for "The Islamic Resistance Movement" and is known by its acronym of Hamas.  The Hamas organization is based in the West Bank and Gaza Strip areas of Israel.

34.     Hamas is a Palestinian Islamist group that emerged in 1987 with the mission of eliminating the State of Israel.

35.     To achieve its stated goal of eliminating Israel, Hamas employs a strategy of: (a) building grassroots support for the organization through social welfare activity; (b) engaging in political activity that competes with the secular Palestinian Authority (PA); and (c) committing guerilla and terrorist attacks that target Israeli soldiers and citizens.

36.     The military wing of Hamas, called Izz el-Din al-Qassam Brigades, carries out suicide bombings and other attacks within Israel, the West Bank, and Gaza.  These attacks target civilians and have resulted in deaths and injuries to thousands of civilian men, women, and children, including the victim Plaintiffs in this action.

37.     In 1995, the U.S. government designated Hamas a "Specially Designated Terrorist" entity, at which time its assets subject to U.S. jurisdiction were blocked by Executive Order 12947 and implementing regulations.  The Executive Order prohibits transactions, including financial transactions, with organizations and individuals so designated.  Former Hamas Political Bureau Chief and current Deputy Chief Mousa Abu Marzook was designated as a Specifically Designated Terrorist on August 29, 1995.

38.     On October 8, 1997, Hamas was designated a Foreign Terrorist Organization by the U. S. Secretary of State, pursuant to 8 U.S.C. §1189, by publication in the Federal Register.

As of that date it became unlawful to provide material support and resources, including currency or monetary instruments, financial services, personnel, transportation, and other provisions to any component of Hamas.

39.     The number of Hamas terrorist attacks increased dramatically with the onset of the Second Intifada in September 2000. From September 29, 2000 through March 24, 2004, Hamas conducted over 425 terrorist attacks killing over 300 people and wounding thousands more.

## STATEMENT OF FACTS

### Iran's Provision of Material Support and Resources to Hamas

40.     The United States Department of State has continuously listed Iran as a state sponsor of terrorism since 1985.   During the period of 1993 to 2004, the United States considered Iran as "the premier state sponsor of terrorism" and the "most dangerous sponsor and the greatest source of concern to U.S. policymakers."

41.     Relations between Iran and Hamas were formalized in 1988 when Iran accepted a Hamas diplomatic delegation to Iran and established official relations.

42.     A specific branch within the IRGC known as the "Qods Force" is charged with foreign operations, including the provision of material and logistical support to insurgents and terrorist organizations, including Hamas.

43.     In 1992, Israel deported approximately 400 Hamas operatives from the Gaza Strip to Lebanon.   While in Lebanon, these Hamas operatives were provided with military and terrorist training by Defendant IRGC and by Hezbollah members who were trained and sponsored by Defendant Iran.

44.     Hamas members in Lebanon were trained in ambush techniques, kidnapping,

methods of subterfuge, and a broad range of firearms, bombing, and other types of weapons. This training continued until late 1993, when nearly all of the newly-trained Hamas terrorists returned to the West Bank and Gaza.

45.     Iran also trained Hamas operatives at a large military camp near Tehran, Iran operated by the "Qods Force."  In 1994, a group of 19 Hamas members spent three and one-half months in intensive military exercise led by MOIS.

46.     Hassan Salameh, a Hamas commander responsible or planning and carrying out suicide bombings in Israel received all of his military training in Iran, including instruction on how to use explosives, automatic weapons, hand grenades, shoulder-fired missiles, and ambush techniques.

47.     Since the early 1990s, Iran has given Hamas millions of dollars annually to build the operational infrastructure from which to carry out terrorist activities in Israel.  In 1996 and 1997 alone, Iran provided Hamas with between $25 million and $50 million dollars.

48.     Iran has transferred millions of dollars to Hamas for the purpose of financing terrorist activities aimed at Israeli targets

49.     Iran rewarded Hamas financially after terrorist actions occurring in Israel or against Israeli citizens, particularly for those of a spectacular nature such as suicide bombings. At all times relevant to this action, Iran provided material support and resources to Hamas, including funding, direction, and training.

50.     At all times relevant to this action, MOIS directed and orchestrated Iran's intelligence service within and beyond the borders of Iran.  Iran has long funneled the majority of funding it makes available to support terrorism through MOIS.  MOIS, acting through the scope of its agency, performed acts of terrorism and provided material support to Hamas for

terrorist acts resulting in death, personal injury, hostage taking, torture, and emotional distress.

51.     Defendants, directly and indirectly through their agents and instrumentalities aided and abetted and conspired with Hamas, providing financial support, training, weapons, safe haven, incitement which were instrumental in achieving the physical and mental anguish committed against Plaintiffs.

52.     The Defendants, directly and indirectly through their agents and instrumentalities, provided material support via financing, training, weapons, safe haven, encouragement, incitement to Hamas and affiliated terrorist organizations (such as Hezbollah) who operated jointly with Hamas in directing terror attacks against Israeli civilians.  The defendants knew or should have known that this support would be used to fund and incite jihad and terrorism against Jews, Israelis and others in Israel.

53.     By providing myriad avenues along which to support terrorist activities, Iran confirmed their relationship with Hamas.  By employing Supreme Leader Ayatollah Ali Khamenei, President Ahmedinejad and the IRGC to collaborate, design and execute acts of terror with Hamas, PIJ and the AAMB, Defendants have solidified that these entities and individuals are agents and instrumentalities of Iran.  As such, Defendants are directly and jointly and severally liable for the injuries suffered by Plaintiffs and should, therefore, be held accountable.

**<u>August 19, 2003 Terrorist Attack</u>**

54.     In early August 2003, Majdi Za'atari ("Za'atari"), a Hamas operative, met with a commander in the military wing of Hamas for the purpose of finding a suitable location to carry out a suicide attack in Israel.

55.     Za'atari and his commander identified the No. 2 Egged bus and chose an unsecured bus stop near the Novotel Hotel to detonate the bomb.

56.     The No. 2 Egged bus was an articulated double-decker bus with front and rear sections connected by a middle chamber with a rotating circular floor.  Each section of the bus had a stairwell leading to an upper deck.

57.     On August 19, 2003, Ra'ad Misk ("Misk"), another Hamas operative, was sent by a commanding officer in Hamas to receive instructions on how to activate and detonate an explosive belt that would be worn in the bombing of the No. 2 Egged bus.  Misk was further instructed to dress in a manner that would allow him to pass as an Orthodox Jew.

58.     On August 19, 2003, Plaintiff, Shalom Goldstein ("Shalom") boarded the No. 2 Egged bus in Jerusalem, Israel.

59.     Plaintiff Shalom Goldstein sat in a seat that was adjacent to the aisle a couple of seats behind the bus driver and facing the back of the bus.

60.     At approximately 9:10 p.m., as the bus entered the Shmuel Ha-Navi neighborhood in Jerusalem, Misk entered the bus through the rear entrance and detonated the bomb strapped to his body.

61.     The explosion killed 23 people, and wounded over 130 in and around the bus, including Plaintiff, Shalom Goldstein, who was aboard the bus.

62.     Shalom was rendered unconscious as a result of the explosion and woke up on the floor of what remained of the bus which was darkened by a cloud of smoke, soot and debris.  He eventually made it off the bus and discovered that his clothes were in shreds, his glasses were missing and he was covered in the blood and remains of his fellow passengers.  The explosion burst Shalom's eardrums, leaving him largely deaf and with severe ear pain. The explosion also caused severe lacerations and bruises to the body, face, and eyes from flying shards of window glass as well as physical shock from the pressure wave of the bombing.

63.     Plaintiff, Rabbi Simcha Goldstein, is the father of Shalom. Rabbi Goldstein first learned about the terrorist attack and his son's injuries from his sister whose daughter read about the incident in an Israeli publication.

64.     Plaintiff, Sarah Breina Goldstein, is the mother of Shalom.  Mrs. Goldstein first learned about the terrorist attack and her son's injuries from her husband, Rabbi Goldstein. Following the attack, Mrs. Goldstein, who was pregnant at the time, saw a picture of the destroyed bus her son was a passenger on, causing her to suffer such severe emotional distress that it induced labor of her youngest child.

65.     Plaintiff, Yechezkal Shraga Goldstein, is the brother of Plaintiff, Sholom Goldstein.  Yechezkal was a resident of Israel at the time of the terrorist attack and was first informed of the attack and his brother's injuries by Plaintiff, Sholom Goldstein, who called Yechezkal shortly after the attack.  Yechezkal met Plaintiff, Sholom Goldstein, at the hospital and witnessed first-hand the injuries suffered by his brother.

66.     Shortly after the bombing, Hamas claimed responsibility for the attack.

67.     Hamas identified Misk as a member of the Qassam Brigades, included Misk on its list of Martyrs, released photographs of Misk posing with weapons, and the text of Misk's living martyr's will.

68.     Plaintiffs' injuries were caused by a willful and deliberate act of Hamas, acting under sponsorship and direction, and with material support and resources of Defendants. Accordingly, Defendants are jointly and severally liable to Plaintiffs for their injuries under vicarious liability.

## COUNT I
## ASSAULT AND BATTERY
### CLAIM OF PLAINTIFF SHALOM GOLDSTEIN

69.     Plaintiff, Shalom Goldstein, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

70.     At all times relevant hereto, Plaintiff, Shalom Goldstein, was a national of the United States.

71.     On and before August 19, 2003, Defendants provided material support and resources to Hamas for the purpose of committing extrajudicial killings on the Number 2 Egged bus in Jerusalem, Israel.

72.     The actions of the Defendants caused and led directly to the August 19, 2003 terrorist attack.  The attack intentionally and willfully put Plaintiff Shalom Goldstein in fear for his life and apprehension of harm and injury as a direct result of fear of imminent death or mutilation.

73.     The explosion was intended to cause harmful contact with Plaintiff Shalom Goldstein, and in fact caused such contact.  Plaintiff Shalom Goldstein's injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon Plaintiff and others and by so doing to intimidate Israel and the United States.  Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants.

74.     The proximate result of Defendants' provision of material support and resources to Hamas was the willful battering and injuring of Plaintiff, Shalom Goldstein, with intent to kill. The personal injuries and losses suffered by Plaintiff Shalom Goldstein were proximately caused by the intentional and reckless acts, omissions and other tortious conduct of all Defendants as

described herein.

75.     The bombing inflicted severe and permanent injuries with great pain and suffering, requiring extensive and continuing medical treatment and expenses including hospitals, physician's services, nursing care, and rehabilitation treatment, and diminishing Plaintiff's earning capacity.

76.     The willful, wrongful, and intentional acts of Hamas were funded and directed by Defendants, Islamic Republic of Iran, Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps. .

WHEREFORE, Plaintiff, Shalom Goldstein, demands judgment against Defendants, jointly and/or severally, for economic damages, solatium, pain and suffering, and punitive damages.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS OR SOLATIUM
### ALL PLAINTIFFS

77.     Plaintiffs repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

78.     At the time of the attack, Plaintiff Shalom Goldstein was a citizen of the United States and suffered extraordinary grief and mental anguish as a direct and proximate result of witnessing and suffering physical injuries in the August 19, 2003 terrorist attack.

79.     Plaintiffs, the immediate family members of Shalom Goldstein, were citizens of the United States and suffered extraordinary grief and mental anguish as a direct and proximate result of August 19, 2003 terrorist attack upon Shalom Goldstein.

80.     Defendants knew that the August 19, 2003 terrorist attack would kill or injure Israeli and United States citizens, resulting in severe emotional distress to the victims of the

attack and their immediate family members.

81.     As a direct and intended consequence of the intentional and reckless actions of the Defendants, conduct that is intolerable in a civilized society, the Defendants, their co-conspirators and those who were substantially aided and abetted by Defendants who carried out the attacks above alleged, caused Plaintiffs severe mental distress, which has required continuing treatment, which will continue for the balance of the Plaintiffs' lives, and they have thereby suffered damage.

82.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will forever in the future suffer severe and permanent emotional distress and anxiety, permanent psychological distress and permanent mental impairment.

83.     Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.  Plaintiffs' emotional distress was so severe that no reasonable person could be expected to endure it.

84.     The Defendants, by engaging in this unlawful conduct, recklessly and/or intentionally inflicted severe emotional distress upon the Plaintiffs.

WHEREFORE, Plaintiffs demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for economic damages, solatium, severe mental anguish, emotional distress, pain and suffering and punitive damages.

## COUNT III
## PUNITIVE DAMAGES
### ALL PLAINTIFFS

85.     Plaintiffs repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

86.   The actions of Defendants, intentionally carried out through their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations.

87.   Defendants intended serious injuries to result from their actions.

88.   Plaintiffs were civilians and were not engaged in war or in police duties.

89.   The actions of those who carried out the attack were within the scope of their agency on behalf of the Defendants.

90.   Plaintiffs are entitled to punitive damages in accordance with the provisions of 28 U.S.C. § 1605A(c).

WHEREFORE, each of the sixteen Plaintiffs demands judgment, jointly and/or severally, for punitive damages against each Defendant.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that the Court grant judgment in their favor and against the Defendants, jointly, severally, and *in solido* on Counts One through Ten, and grant to Plaintiffs:

- Compensatory and punitive damages in favor of Plaintiffs and against Defendants jointly, severally, and *in solido*, in the amounts demanded in this Complaint for Damages;
- Prejudgment interest or other appropriate interest;
- Costs and expenses;
- Attorney's fees; and
- Such other and further relief as this Honorable Court may determine to be just and appropriate under the circumstances.

Respectfully submitted this 23rd day of December 2016

Plaintiffs, by Counsel,


/s/ Michael J. Miller
Michael J. Miller, Esq.
D.C. Bar No. 397689
THE MILLER FIRM LLC
108 Railroad Avenue
Orange, VA  22960
Tel:  540-672-4224

Allen L. Rothenberg, Esq.
D.C. Bar No. 328088
THE LAW FIRM OF ALLEN L. ROTHENBERG
1420 Walnut Street
Philadelphia, PA  19102
Tel:  800-624-8888
*Attorneys for Plaintiffs*