**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SHALOM GOLDSTEIN,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **ISLAMIC REPUBLIC OF IRAN,** *et al.*, <br><br> Defendant. | Case No. 16-cv-2507 (CRC) |

### **MEMORANDUM OPINION**

Plaintiff Shalom Goldstein is one of some 130 people who were either killed or injured in a Hamas bus bombing in Jerusalem in August 2003. Goldstein survived and brings this suit for assault and battery and, along with his relatives, emotional distress. Plaintiffs name as defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iran Revolutionary Guard Corps, all of which (plaintiffs say) sponsored the Hamas organization and enabled the bus bombing to occur.[1] Defendants did not appear in the action, and plaintiffs have moved the Court to (1) take judicial notice of the Court's findings of fact and conclusions of law in a related case, Cohen v. Islamic Republic of Iran, 238 F. Supp. 3d 71 (D.D.C. 2017), involving the same August 2003 terrorist attack and essentially identical legal claims; (2) adopt Cohen's findings of fact and conclusions of law in this case; (3) enter default judgment against the defendants on the issue of liability; and (4) appoint a Special Master to conduct a damages proceeding. For the reasons set forth below, the Court will grant each of plaintiffs' requests.

---

[1] The Iranian Revolutionary Guard Corps is no longer a party in the case.

## I. Background

The facts of the 2003 attack, and the allegations related to Iran's support of Hamas, are recounted exhaustively in this Court's opinion in the Cohen case. 238 F. Supp. 3d at 75-79. Because the Court will ultimately adopt those factual findings, the Court will only briefly summarize them here, in addition to highlighting those facts specific to Mr. Goldstein's claims.

On August 19, 2003, Shalom Goldstein was riding in the Number 2 Egged Bus in Jerusalem, Israel. Compl. ¶ 58. When the bus passed through the Shmuel Ha-Navi neighborhood, a man named Ra'ad Misk boarded the bus and denotated an explosive belt strapped to his body. Id. ¶ 60. The explosion killed 23 people and wounded over 130, including Goldstein. Id. ¶ 61. Goldstein suffered lacerations and bruises to his body, face, and eyes, experienced shock, and has been rendered largely deaf. Id. ¶ 62; Declaration of Shalom Goldstein ("Shalom Decl.") ¶¶ 4, 6, 7-9.

Hamas claimed responsibility for the attack. Id. ¶¶ 66-67. Hamas, short for Harakat al-Muqawamah al-Islamiyya or the "Islamic Resistance Movement," is a group dedicated to the destruction to the state of Israel. Id. ¶¶ 33-36. Goldstein alleges that Iran, through its Ministry of Information and Security and Revolutionary Guard Corps, has long been a state sponsor of Hamas. Id. ¶¶ 44-53. As a consequence, he alleges that it is liable for his injuries. Id. ¶ 68.

Goldstein filed suit against the Iran defendants pursuant to 28 U.S.C. § 1605A, an exception to the Foreign Sovereign Immunities Act that allows suit against state sponsors of terror. He seeks compensatory and punitive damages for assault and battery and emotional distress. Id. ¶¶ 69-90. Goldstein is joined by assorted relatives, who all sue for loss of society and emotional distress stemming from the same episode. Id. ¶¶ 12-26. Goldstein properly

2

served the defendants, but the defendants failed to file an answer or otherwise appear in the case; Goldstein moves the Court to take judicial notice of its previous findings of fact and conclusions of law in the Cohen case and to grant default judgment. Plaintiff's Motion to Take Judicial Notice and for Default Judgment ("Mot. Default Judgment"). These motions are now ripe for the Court's resolution.

## II. Legal Standards

### A. Judicial Notice

Federal Rule of Evidence 201(b) permits courts to take judicial notice of facts "not subject to reasonable dispute" that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." "A court may take judicial notice of, and give effect to, its own records in another but interrelated proceeding[.]" Opati v. Republic of Sudan, 60 F. Supp. 3d 68, 73-74 (D.D.C. 2014) (quoting Booth v. Fletcher, 101 F.2d 676, 679 n.2 (D.C. Cir. 1938)); see also 29 Am.Jur.2d Evidence § 151 (2010). Given the large number of victims in terrorist attacks, and the flood of cases that they generate, courts regularly take judicial notice of the record in related cases in the FSIA context. See, e.g., Rimkus v. Islamic Republic of Iran, 750 F. Supp. 2d 163, 171 (D.D.C. 2010) (collecting cases).

### B. Default Judgment

Under Federal Rule of Civil Procedure 55(b)(2), the Court may consider entering a default judgment when a party applies for that relief. See Fed. R. Civ. P. 55(b)(2). "[S]trong policies favor resolution of disputes on their merits," and therefore, "default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting

H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Under FSIA, "entry of a default judgment is not automatic." Braun v. Islamic Republic of Iran, 228 F. Supp. 3d 64, 74, 2017 WL 79937, at *4 (D.D.C. Jan. 9, 2017) (internal citation omitted). First, the Court must still consider whether it has subject matter jurisdiction over the action, James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1092 (D.C. Cir. 1996), and whether it has personal jurisdiction over the defendants, Mwani v. bin Laden, 417 F.3d 1, 6-7 (2005). And even then, a claimant must "establish[ ] his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). "The Court, therefore, may not simply accept a complaint's unsupported allegations as true . . . but may rely upon uncontroverted factual allegations that are supported by affidavits." Worley v. Islamic Republic of Iran, 75 F. Supp. 3d 311, 319 (D.D.C. 2014) (internal quotation marks and citations omitted).

### III. Analysis

#### A. Threshold Issues

The Court must first check for subject-matter and personal jurisdiction and consider whether the suit was timely filed. Subject-matter jurisdiction is assured by the Court's decision, explained below, to take judicial notice of the factual findings and legal conclusions in Cohen, a case closely related to this one. 238 F. Supp. 3d at 79-80 (explaining why the Court had subject-matter jurisdiction over a lawsuit involving same terrorist attack and same defendants). The existence of personal jurisdiction, however, depends on whether the plaintiffs in this case effectuated service of process on the Iranian defendants consistently with 28 U.S.C. § 1608. They did. Section 1608(a)(4) permits service "by sending two copies of the summons and complaint and a notice of suit . . . to be addressed and dispatched by the clerk of the court to the

Secretary of State" who will then "transmit one copy of the papers through diplomatic channels to the foreign state." That is what plaintiffs did here, and the summons, complaint, and notice of suit were delivered to the Iranian Ministry of Foreign Affairs on March 18, 2018. ECF No. 8.

That leaves the statute-of-limitations question. Though the D.C. Circuit had held that FSIA's statute of limitations is nonjurisdictional (meaning the defendant must raise the issue, or else it is waived), Owens v. Republic of Sudan, 864 F.3d 751, 801-04 (D.C. Cir. 2017), courts in this district have exercised their discretion to raise the issue *sua sponte* because of FSIA's special circumstances, see, e.g., Bathiard v. Islamic Republic of Iran, 317 F. Supp. 3d 134, 138 (D.D.C. 2018).[2] Regardless, plaintiffs' claims appear to just barely fit within the statute of limitations. The FSIA states that "[a]n action may be brought or maintained . . . if the action is commenced, or a related action was commenced . . . not later than the latter of (1) 10 years after April 24, 1996; or (2) 10 years after the date on which the cause of action arose." 28 U.S.C. § 1605A(b). Plaintiffs filed suit in December 2016, some 20 years after the first date and thirteen after the 2003 bus bombing—so plaintiffs' suit by itself is too late.

But the suit is nevertheless timely since it is tethered to a timely-filed related action. To qualify for this exception, plaintiffs must show "(1) that the original action to which their case is related was timely filed under the ten-year statute of limitations provision discussed above and (2) that the related action was filed within the separate statute of limitations period provided in section 1083(c)(3) of the National Defense Authorization Act for Fiscal Year 2008." Bathiard, 317 F. Supp. 3d at 143 (citing Owens, 864 F.3d at 799-800). Plaintiffs meet both criteria. The

---

[2] This decision, by the undersigned, and a related one by Judge Bates, Maalouf v. Islamic Republic of Iran, 306 F. Supp. 3d 203, 209 (D.D.C. 2018), are currently being appealed to the D.C. Circuit.

original action to which their case is related, Cohen, was filed in 2012, 238 F. Supp. 3d at 78, safely within FSIA's ten-year limitations period. And plaintiffs filed this suit within the NDAA's limitations period, which requires the related action to be filed within 60 days of entry of judgment in the original action. Bathiard, 317 F. Supp. 3d at 143. Here, plaintiffs actually filed suit three months *before* final judgment was entered in Cohen. Satisfied that this lawsuit is timely, the Court now proceeds to the merits.

   B.  Liability

Plaintiffs first ask the Court to take judicial notice of its factual findings and legal conclusions in Cohen, a case stemming from the same August 2003 bus bombing and involving the same set of Iranian defendants. "Because of the multiplicity of FSIA-related litigation, courts in this District have frequently taken judicial notice of earlier, related proceedings." Fain v. Islamic Republic of Iran, 856 F. Supp. 2d 109, 115 (D.D.C. 2012); see, e.g., Bodoff v. Islamic Republic of Iran, 907 F. Supp. 2d 93, 96, 103 (D.D.C. 2012) (taking judicial notice of prior cases involving same 1996 Jerusalem bus bombing); Ben-Rafael v. Islamic Republic of Iran, 718 F. Supp. 2d 25, 28 (D.D.C. 2010) (1992 embassy bombing in Buenos Aires, Argentina); Valore v. Islamic Republic of Iran, 478 F. Supp. 2d 101, 104 (D.D.C. 2007) (1983 Marine barracks attack in Beirut, Lebanon). The Court sees no reason to depart from that general practice here.

The facts established in the Cohen proceeding—namely, that a Hamas operative detonated a bomb on a Jerusalem bus in August 2003 that killed 23 people and injured scores more, and that Iran had long provided material support to Hamas—are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For starters, the bus bombing and Hamas's responsibility for it are matters of historical record, not speculation "subject to

reasonable dispute." The Cohen plaintiffs nevertheless went to some lengths to prove this. "Plaintiffs have produced evidence—through expert declarations, direct translations of Hamas's website, and findings in prior judicial decisions—that Hamas was responsible for planning and executing the August 2003 bus bombing." 238 F. Supp. 3d at 81. Nor is Iran's support for Hamas in much doubt, as the Cohen plaintiffs also showed. "The submitted evidence also indicates that Iran and its instrumentalities had a deep-rooted history of routinely funding, training, providing weaponry, and guiding Hamas, enabling the organization to survive and perpetuate terrorist attacks, such as the one here." Id.

But while the propriety of *taking* judicial notice is plain, the question of what *effect* such notice has in this case warrants more discussion. "Although a court clearly may judicially notice its findings of facts and conclusions of law in related cases, this Circuit has not directly considered whether and under what circumstances a court may judicially notice the *truth* of such findings and conclusions." Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 58 (D.D.C. 2010). Some courts suggest it is improper to do so, since such findings "are disputable and usually are disputed." Taylor v. Charter Med. Corp., 162 F.3d 827, 830 (5th Cir. 1998). Moreover, courts should be particularly cautious when asked to adopt as true factual findings and legal conclusions made in default judgment proceedings, where the record was developed without the "full benefits of adversarial litigation," and the "findings thus lack the absolute certainty with which they might otherwise be afforded." Murphy, 740 F. Supp. 2d at 58.

Even so, the Court has no qualms taking as true the factual findings and legal conclusions in Cohen. For one, entry of default judgment under the FSIA is proper once a plaintiff establishes their entitlement to judgment on any "evidence satisfactory to the court." 28 U.S.C. § 1608(e). The judicially noticed facts and conclusions therefore need not be utterly

7

unimpeachable, or the sort of findings that would have preclusive effect had Iran appeared in this case, Weinstein v. Islamic Republic of Iran, 175 F. Supp. 2d 13, 20 (D.D.C. 2001). For another, even if Cohen's factual findings and legal conclusions lacked the "full benefits of adversarial litigation," there is little reason to doubt them. Murphy, 740 F. Supp. 2d at 58. As detailed above, the plaintiffs in Cohen presented extensive evidence that established Hamas's responsibility for the 2003 bus bombing and Iran's complicity in that bombing. While that evidence was not subject to adversarial testing—and apparently never will be, given Iran's refusal to litigate these suits—it would be difficult indeed to undermine it. Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 389 (D.D.C. 2015) (finding evidence to conclude that support of Hamas was "in effect, the official state policy of Iran"). The Court will therefore take judicial notice of the factual findings and legal conclusions in its earlier Cohen decision and adopt them in this case.

The next question, then, is whether the Court's adoption of the liability determination in Cohen provides a sufficient basis for entry of default judgment in this case. By itself, not quite. But when Cohen's conclusions are combined with evidence unique to plaintiffs' claims in this case, the Court concludes that plaintiffs are entitled to default judgment. The Cohen decision establishes that (1) Hamas committed the August 19, 2003 bus bombing in Jerusalem and (2) Iran sponsored and supported Hamas and is therefore liable for the attack under 28 U.S.C. § 1605A. 238 F. Supp. 3d at 87. Cohen also established that such conduct is sufficient to satisfy most of the elements of the same torts (assault and battery and infliction of emotional distress) Goldstein alleges in this case. So by taking judicial notice of that decision, and adopting the factual findings and legal conclusions therein, plaintiffs are relieved of that showing in this case.

Still, plaintiffs cannot rest entirely on the Cohen decision. Plaintiffs raise *personal* injury claims, which means they must provide some proof that they were personally injured. Goldstein's battery claim, for instance, requires him to show that "when [the defendants] provided material support and resources to Hamas, they acted intending to cause a harmful or offensive contact with, or an imminent apprehension of such a contact by, those attacked and a harmful contact with those attacked directly or indirectly resulted." Cohen, 238 F. Supp. 3d at 83 (quoting Bluth v. Islamic Republic of Iran, 203 F. Supp. 3d 1, 20-21, 2016 WL 4491760, at *13 (D.D.C. Aug. 25, 2016)). Cohen's findings can establish the first element—that Iran's support of Hamas intended to cause harmful contact or the apprehension of it—but Goldstein must provide some evidence of his own that he suffered as much. Ditto for plaintiffs' emotional distress claims, which both Goldstein and his relatives raise. For this claim, plaintiffs must show that the defendants' conduct caused them "severe emotional distress." Id. To do so, plaintiffs (and the Court) "may rely upon uncontroverted factual allegations that are supported by affidavits." Worley, 75 F. Supp. 3d at 319 (internal quotation marks and citations omitted).

Plaintiffs' initial submissions failed to substantiate their claimed injuries, but they have since provided ample evidentiary support. Shalom Goldstein submitted a declaration, accompanied by medical records, detailing how the explosion rendered him unconscious, "burst [his] eardrums," and "caused severe lacerations and bruises to [his] body, face and eyes," Shalom Decl. ¶ 4; id., Ex. C, which is more than enough support for his assault and battery claims. The declaration also provides ample support for Goldstein's emotional distress claim, attesting that he "suffered, and continue[s] to suffer, severe emotional distress," including "anxiety and bouts of depression" about which he frequently consults his Rabbi. Id. ¶ 9. The same can be said for the emotional distress claims brought by Goldstein's relatives. Goldstein

9

himself states that "the lives of my entire family [] ha[ve] never been the same following the terrorist attack" and that he has "personally witnessed the severe emotional injuries that my parents and siblings suffered as a result of the attack." Id. ¶ 10. His mother, meanwhile, submitted a declaration describing "the pain and desperation that [she] felt after learning of the attack" and how she "never felt such a sense of terror as I did on that day." Declaration of Sarah Goldstein ¶ 5. She further claims that all of her children—Shalom's Goldstein's siblings— "suffered extreme emotional distress" from the attack, including by becoming "immediately anxious when in public places and . . . fearful of another attack at all times." Id. ¶ 7.

Combining Cohen's conclusions that a Hamas operative intentionally destroyed the bus and that Iran could be held liable as a state sponsor of Hamas's terrorism with plaintiffs' submissions showing Goldstein was personally injured in the same attack and that his family has suffered harm stemming from the attack, the Court finds that plaintiffs have established their "claim or right to relief by evidence that is satisfactory to the court." 28 U.S.C. § 1608(e). Accordingly, the Court will grant plaintiffs' motion for default judgment on the liability issue.

    C. <u>Damages</u>

Though the Court has concluded that defendants are liable to plaintiffs under the FSIA, it will appoint—just as it did in Cohen—a special master to assess the issue of damages. 238 F. Supp. 3d at 86. "In determining the proper measure of damages, [t]he courts of the United States may appoint special masters to hear damages claims brought under the state-sponsored terrorism exception to the FSIA." Taylor, 811 F. Supp. 2d at 17-18 (quoting 28 U.S.C. § 1605A(e)(1)) (internal quotation marks omitted). The Court finds that appointing a special master in this case would not create unreasonable expense or delay and would help efficiently resolve this

action. See Fed. R. Civ. P. 53(a)(3); see also Taylor, 811 F. Supp. 2d at 17 (appointing a special master to assess damages claims in a multiple plaintiff FSIA case).

## IV. Conclusion

For the foregoing reasons, the Court will grant plaintiffs' motion to take judicial notice of the Cohen decision and enter default judgment against the Iran defendants on the issue of liability. A separate Order shall accompany this memorandum opinion, along with a separate Order detailing the appointment of a special master to make a recommendation to the Court on the issue of damages.

CHRISTOPHER R. COOPER
United States District Judge

Date: December 4, 2018