# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHALOM GOLDSTEIN,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **ISLAMIC REPUBLIC OF IRAN,** *et al.*, <br><br> Defendant. | Case No. 16-cv-2507 (CRC) |

## MEMORANDUM OPINION

Plaintiff Shalom Goldstein was one of some 130 people who were either killed or injured in a terrorist bus bombing in Jerusalem in August 2003. Goldstein survived and brought suit for assault and battery and, along with his relatives, emotional distress. Plaintiffs named as defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iran Revolutionary Guard Corps, all of which (plaintiffs said) sponsored the terrorist group responsible for the bombing.[1] After Defendants did not appear in the action, the Court entered a default judgment against Defendants on the question of liability. December 4, 2018 Order, ECF No. 16. In a separate order, the Court appointed Deborah Greenspan as a special master and requested that she prepare a report and recommendation ("R & R") regarding the appropriate amount of damages to be awarded to each plaintiff. December 4, 2018 Order, ECF No. 18. Relying on the depositions, medical records, and other evidence provided by Plaintiffs, Special Master Greenspan has produced a comprehensive R & R on the damages issue. See ECF No. 19. In this opinion, the Court will partially adopt the R & R's factual findings and recommendations

---

[1] The Iranian Revolutionary Guard Corps was later dropped from the case.

and will resolve the few questions—regarding punitive damages and prejudgment interest—left open by the R & R.

**I.     Damages[2]**

Plaintiffs request both compensatory and punitive damages. "[T]hose who survived an attack may recover damages for their pain and suffering" while "family members can recover solatium for their emotional injury." Wultz v. Islamic Republic of Iran, 864 F. Supp. 2d 24, 37 (D.D.C. 2012) (citing Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 82-83 (D.D.C. 2010)). Both sets of plaintiffs are eligible for punitive damages, id., subject to FSIA-specific limitations the Court will discuss later. To establish damages, Plaintiffs "must prove the amount of the damages by a reasonable estimate consistent with [the D.C.] Circuit's application of the American rule on damages." Wultz, 864 F. Supp. 2d at 37 (internal quotation marks and citation omitted). "In determining the reasonable estimate, courts may look to expert testimony and prior awards for comparable injury." Braun v. Islamic Republic of Iran, 228 F. Supp. 3d 64, 82 (D.D.C. 2017) (internal citations omitted).

   A.   Compensatory Damages

Plaintiffs seek two species of compensatory relief: Shalom Goldstein seeks pain and suffering damages for the injuries he suffered in the bombing, while his family seeks solatium damages. The Court takes these in turn.

---

[2] The Court recounted the factual background of the 2003 bus bombing in its opinion awarding Plaintiffs a default judgment, see Goldstein v. Islamic Republic of Iran, 2018 WL 6329452 (D.D.C. Dec. 4, 2018), and in another default judgment opinion concerning the same bombing, Cohen v. Islamic Republic of Iran, 238 F. Supp. 3d 71, 75-79 (D.D.C. 2017). It incorporates those facts by reference here, and will reproduce only the facts pertinent to the question of damages.

*1. Pain and Suffering Damages for Shalom Goldstein*

The Court begins with what it said in Cohen v. Islamic Republic of Iran, 268 F. Supp. 3d 19, 24 (D.D.C. 2017) ("Cohen II"): that the process of assessing damages for pain and suffering is an imperfect science, as no amount of money can properly compensate a victim for the suffering he or she endures during and after an attack. In the interest of fairness, however, courts strive to maintain consistency of awards as between the specific plaintiffs and among plaintiffs in comparable situations. With that goal in mind, the District Court for the District of Columbia has "adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages." Wultz, 864 F. Supp. 2d at 37-38 (citing Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25, 54 (D.D.C. 2007), abrogated on other grounds by Mohammadi v. Islamic Republic of Iran, 782 F.3d 9, 15 (D.C. Cir. 2015)). That baseline amount is then adjusted based on the nature of the injury, the pain associated with it, the duration of the hospitalization, and the degree and length of impairment. See Peterson, 515 F. Supp. 2d at 52 n.26; R & R at 12. A downward deviation to $2-3 million, for instance, is appropriate "where victims suffered only minor shrapnel injuries or minor injury from small-arms fire." Wultz, 864 F. Supp. 2d at 38. A more permanent injury or impairment, by contrast, might warrant a larger award. Peterson, 515 F. Supp. 2d at 55-56. Shalom[3] and his family have offered deposition testimony and medical records in support of their damage claims, which the R & R and this

---

[3] To differentiate those plaintiffs who share the same last name, the Court will sometimes refer to them by their first names.

3

Court can rely on to fix an appropriate and individualized award for each plaintiff. See Bluth v. Islamic Republic of Iran, 203 F. Supp. 3d 1, 23 (D.D.C. 2016).

The special master applied this framework to Shalom, the only plaintiff who suffered a physical injury in the attack and the only plaintiff who was present at the site of the attack. The R & R begins by recounting the medical and testimonial evidence of the injuries Shalom suffered and the difficulties he continues to endure. See R & R at 17.[4] The bombing injured his ear drums and right eye and left him with several lacerations and severe pain. Id. His injuries required "multiple visits to doctors and hospitals to treat the injuries." Id. To this day, Shalom continues to struggle with hearing difficulties, although the record does not reveal their extent. Id. In addition, although the record does not contain medical documentation of emotional or psychological injury, Shalom and several of his family members testified that he has suffered a long-term emotional injury that has affected his ability to function in everyday life. Id. For example, Shalom sometimes "is unaware of his surroundings and his wife has to 'bring him back,'" his sleep continues to be negatively affected, and he regularly consults with a rabbi regarding his ongoing emotional struggles. Id. at 4 (recounting deposition testimony).

In light of this evidence and a review of damages awards in similar cases, the R & R recommends an award of $4.25 million, slightly lower than the $5 million baseline. This slight downward variance is "based on a determination that Shalom experienced short-term physical injury but continues to experience significant emotional injury." Id. The special master also used prior case law to contextualize her recommendation. The special master made particular reference to this Court's awards in Cohen II, for injuries incurred in the very same bus bombing.

---

[4] While the Court will not recount in exhaustive detail all of the special master's factual findings, see R & R at 3-12, it does adopt those findings in full and incorporates them herein.

4

There, to take one example, the Court awarded the $5 million baseline figure to Ora Cohen, who suffered a broken nose, a neck injury, and eardrum damage, slightly more severe injuries than what Shalom suffered. See Cohen II, 268 F. Supp. 3d at 25. The special master also explained that her recommendation is consonant with a general trend in FSIA cases involving insignificant short-term physical injuries and ongoing emotional trauma. See R & R at 18 (collecting cases); see also, e.g., Wamai v. Republic of Sudan, 60 F. Supp. 3d 84, 92 (D.D.C. 2014) (awarding $2.5 million to plaintiffs who suffered relatively minor physical injuries yet endure ongoing emotional damage).

The Court agrees with the special master that a downward variance for Shalom is warranted but concludes that the departure should be even more significant. That is primarily because, in the Court's view, the gap between Shalom's injuries and Ora Cohen's—suffered in the same bus bombing—is wider than the R & R concluded. In addition to the fact that Ms. Cohen suffered slightly more severe physical injuries than Shalom, her five children were also injured in the attack. Cohen v. Islamic Republic of Iran, 238 F. Supp. 3d 71, 76 (D.D.C. 2017) ("Cohen I"). The force of the explosion ripped Cohen's infant son from her arms, and the family members were taken to different hospitals for treatment. Id. Cohen did not learn that her younger children had survived the attack until hours later. Id. The family was not reunited for over a week. Id. What's more, Cohen "cared for [her children] as they recovered from successive rounds of surgeries," "consistently placing her own recovery behind that of her children." Cohen II, 268 F. Supp. 3d at 25. These harrowing circumstances rendered Cohen's emotional injury "unique" and helped explain why she was entitled to a baseline award despite suffering physical injuries "not as severe as that of other FSIA plaintiffs." Id. The record does not reflect that Shalom experienced the same level of psychological trauma. It is also significant

5

that Cohen, unlike Shalom, was actually diagnosed with both post-traumatic stress disorder and depression in the year following the bombing. Id.

In light of these distinctions, the Court finds that Shalom's injuries are closer in kind to those suffered by others in the Cohen family—like Orly and Daniel, who suffered from shrapnel wounds and ongoing hearing loss, in addition to emotional distress—and to some plaintiffs in Wamai—who suffered broken bones, head trauma, hearing/vision impairment and emotional distress—than to those endured by Ora Cohen. Those plaintiffs received $3 million and $2.5 million, respectively. Accordingly, the Court will award Shalom $2.5 million in pain-and-suffering damages.

### 2. *Solatium Damages for Shalom Goldstein's Family*

"The state-sponsored terrorism exception to the FSIA expressly contemplates the award of solatium damages to the close relatives of terrorism victims." Fritz v. Islamic Republic of Iran, 324 F. Supp. 3d 54, 61-62 (D.D.C. 2018) (citing 28 U.S.C. § 1605A(c)). Solatium damages are intended to compensate for the "the mental anguish, bereavement and grief that those with a close personal relationship to a [victim] experience[.]" Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). As the special master notes, "[c]ourts may presume that those in direct lineal relationships with victims of terrorism suffer compensable mental anguish." Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 403 (D.D.C. 2015). "This presumption . . . is a direct reaction to terrorists' acknowledged aim of causing the highest degree of emotional distress, literally, terror." Kaplan v. Hezbollah, 213 F. Supp. 3d 27, 38 (D.D.C. 2016) (internal quotation marks omitted). "Solatium claims are typically brought by family members who were not present or injured themselves." Cohen I, 238 F. Supp. 3d at 84. "[T]estimony proving a

close emotional relationship will usually be sufficient to sustain an award of solatium damages." Roth, 78 F. Supp. 3d at 403.

Fifteen of Shalom's relatives—thirteen siblings, two parents—seek solatium damages. Each has provided the court with declarations testifying to their close connection with Shalom and the harm they have suffered as a result of the bus bombing. The special master notes "consistent testimony establishing that this family is extremely close" and that family members "are in frequent—essentially daily—contact." R & R at 19. She further observed that "[e]ach of the family members is intimately familiar with the circumstances of Shalom's injuries and the emotional effects he has experienced" and that the family members "too have developed fear reactions and anxiety that stem from Shalom's experience." Id.

Based on that evidence, the R & R recommends awarding $1.25 million for twelve of Shalom's siblings, $625,000 for one sibling who was not yet born at the time of the bombing, $2.5 million for Shalom's father, Rabbi Simcha Goldstein, and $3 million for Shalom's mother, Sarah Goldstein. The special master arrived at these figures using the same baseline-and-comparison process she used for Shalom's pain-and-suffering damages. "For relatives of victims physically *injured* by terrorist attacks, courts have applied a framework whereby awards are valued at half of the awards to family members of the *deceased*—$4 million, $2.5 million and $1.25 million to spouses, parents, and siblings, respectively." Kaplan v. Hezbollah, 213 F. Supp. 3d 27, 38 (D.D.C. 2016) (emphases added) (internal quotation marks omitted).

The Court agrees with the special master that each of these individuals has established their entitlement to solatium damages but differs on the appropriate amount of damages. Specifically, in light of the Court's decision to reduce Shalom's pain-and-suffering damages by one-half of the baseline, the Court will make corresponding reductions to the recommended

7

solatium awards. As this Court indicated in Cohen II, solatium awards for relatives of victims should be proportionate to the pain-and-suffering awards to the victims themselves. See 268 F. Supp. 3d at 26 (capping solatium damages on behalf of particular victim "so that they do not exceed the amount of damages [the victim] received for pain and suffering").

Start with the $1.25 million the special master recommends for twelve of Shalom's siblings. The testimony provided by Shalom's siblings establishes that they have been deeply affected by the bombing. Shalom's Sister, Shaina Kutten, testified that "she was and is extremely close to Shalom." R & R at 7.[5] She vividly recalls the day her family learned that Shalom was on the bus that was bombed and the fear they all experienced as they waited for information on his well-being. Id. "To this day she is afraid of buses, people, Muslims and whenever she is out in public she views people she sees with suspicion." Id. She said that the incident had a particularly powerful impact on her family "because they are so close" and have all been left with "fear and anxiety." Id. at 8. Ms. Kutten's testimony is echoed and borne out by that of several of her siblings. See, e.g., id. at 8 (brother Shimon Goldstein testifying that "family as a whole was terrorized by the attack"). Based on that testimony, the R & R recommends awarding twelve siblings the standard $1.25 million in solatium damages. Although the Court accepts the special master's conclusion that the Goldstein family is particularly tight-knit and that their testimony amply establishes their right to relief, it nevertheless concludes the reduction in Shalom's pain-and-suffering damages logically compels a proportionate reduction in the siblings' solatium awards—by one-half, to $625,000 each.

---

[5] At times, the quoted statements are the special master's paraphrasing of the testimony, rather than the verbatim words used during the depositions.

The one sibling for whom the R & R recommends a downward variance presents an interesting question. Y.G. was born two days *after* the bombing. Id. at 6. The bulk of authority in FSIA cases adopts the view that children born after a terrorist incident are not entitled to solatium damages. See R & R at 20 (collecting cases); see also, e.g., Wamai, 60 F. Supp. 3d at 86 (denying solatium damages for child born one month after the bombings); Davis v. Islamic Republic of Iran, 882 F. Supp. 2d 7, 15 (D.D.C. 2012) (denying recovery to "after-born plaintiffs"). The reasoning of those cases is not without force. In Davis, for instance, the court granted that while it is fair to assume that an attack on a victim is also an attack on the victims' families, it is less obvious that such an attack is "directed at unborn family members." 882 F. Supp. 2d at 15. Plus, Davis reasoned, a rule permitting recovery for after-born plaintiffs would mean the class of eligible claimants is "potentially unlimited" and the window for recovery "could remain open for decades after a terrorist attack." Id.

Still, while the Court agrees that "some lines must be drawn," id., it agrees with the R & R that special circumstances here justify an award of solatium damages to Y.G. For one thing, Y.G. was born just two days after the bus bombing. As the special master notes, "[t]here is little difference between a child born two days after the attack and a child who was only month old at the time of the attack." R & R at 20-21. "In both situations, the child's feelings of loss of society and comfort stem from the family dynamic and the condition of the victim and his or her relationship with the child." Id. at 21. Furthermore, there is evidence that Y.G. was born prematurely *as a result* of his mother's emotional shock and distress after she learned that her son Shalom was on the bus that had been bombed. As the R & R reasons, "a premature birth in itself is an event that creates fear and anxiety" and therefore "[i]t is reasonable to conclude that this child's life experience was and is affected not only by the experience of his brother that

9

occurred before his birth but also by the circumstances of his birth." Id. That fact alone makes this an exceptional case justifying a solatium award to Y.G., despite the prevailing approach in this district to deny such awards for after-born plaintiffs. The special master nevertheless accounted for Y.G.'s after-born status, by reducing her recommend award by one-half. The Court adopts that same approach, but will halve that amount once more in light of Shalom's reduced pain-and-suffering award. The Court will therefore award $312,500, or half of the amount the other siblings are to receive, to Y.G.

That leaves only the parents. As an initial matter, both parents established their entitlement to solatium damages through extensive testimony about how devastating the attack was on them specifically and the family generally. See id. at 4-6 (summarizing Rabbi Simcha Goldstein and Sarah Goldstein's testimony). The R & R thus recommended beginning both parents at the $2.5 million baseline. However, the special master reasoned that Sarah's "well-advanced pregnancy at the time of the bombing and the fact that she gave premature birth to her youngest child [Y.G.] within two days of the bombing" makes this a rather extraordinary case that justifies a $500,000 upward variance from the $2.5 million solatium-award baseline for parents of victims. Id. at 21. The Court concurs with the special master that Sarah is entitled to an upward adjustment for this reason—although it will again halve the special master's recommendation, consistent with its 50 percent reduction of her son's award. Accordingly, the Court will award $1.25 million to Rabbi Simcha Goldstein and $1.5 million to Sarah Goldstein.

### 3. Prejudgment Interest

Plaintiffs also demand prejudgment interest, and the R & R reaches only an equivocal conclusion on the subject. R & R at 22 ("In general, it seems that the reasoning of cases that have declined prejudgment interest is reasonable."). "The decision to award prejudgment

interest, as well as how to compute that interest, rests within the discretion of the court, subject to equitable considerations." Baker v. Socialist People's Libyan Arab Jamahirya, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). As the R & R recalls, this Court previously expressed doubt that it would be proper to tack prejudgment interest onto a compensatory damages award for nonpecuniary injuries, the sort of injuries at issue here. Cohen II, 268 F. Supp. 3d at 27 n.2. In Cohen II, the Court reasoned that, because nonpecuniary damages, which include pain and suffering and solatium damages, are "designed to be fully compensatory," they are "complete and prejudgment interest is not necessary to make the plaintiffs whole." Id. (quoting Thuneibat v. Syrian Arab Republic, 167 F. Supp. 3d 22, 55 (D.D.C. 2016); accord Wyatt v. Syrian Arab Republic, 908 F. Supp. 2d 216, 232 (D.D.C. 2012) (denying prejudgment interest because "pain and suffering and solatium damages are both designed to be fully compensatory").

While the Court is aware of well-reasoned decisions in this district that have gone the other way, see, e.g., Fritz, 324 F. Supp. 3d at 63-64, it continues to believe that prejudgment interest is not appropriate for nonpecuniary damages already designed to provide complete compensation. That is especially true here, because the special master calculated what she believed an appropriate award would be while knowing this Court's reluctance to tack on prejudgment interest. See R & R at 22. The Court also finds inapplicable here a premise that Fritz and other decisions have used to justify a contrary result. Fritz noted that "[a]wards for pain and suffering and solatium are calculated without reference to the time elapsed since the attacks," which means such awards are "best viewed as fixed at the time of the loss" and that prejudgment interest should therefore be awarded "to account for the time that they have not had access to that full amount." 324 F. Supp. 3d at 63. Here, however, the special master quite clearly took into account the long-lasting, ongoing nature of the victims' injuries in determining

11

an appropriate compensatory award. After finding that each of the plaintiffs "continues to suffer fear and anxiety" and "suffers from ongoing and significant emotional injuries," the special master explained that "[i]n determining an appropriate award, it is necessary to consider the nature and duration of the injury" and its "long-terms effects (emotionally and physically)." R & R at 12. Thus, whatever the usual rule is for calculating pain and suffering damages, it is evident the special master here accounted for the passage of time—and the persistence of the plaintiffs' trauma—in determining an appropriate compensatory award.[6]

    B. <u>Punitive Damages</u>

The R & R did not make a recommendation on a punitive damages award. See R & R at 26. The special master noted that this Court in <u>Cohen II</u> awarded punitive damages in the FSIA context, <u>id.</u> (citing <u>Cohen</u>, 268 F. Supp. 3d at 28), but <u>Cohen II</u> was decided *before* the D.C. Circuit's conclusion in <u>Owens v. Republic of Sudan</u>, 864 F.3d 751, 812 (D.C. Cir. 2017), that the FSIA terrorism exception "does not retroactively authorize the imposition of punitive damages against a sovereign for conduct occurring before the [2008] passage of § 1605A." Because the complained-of conduct here occurred in 2003, five years before § 1605(A)'s enactment, the rule announced in <u>Owens</u> precludes an award of punitive damages. See <u>Fritz</u>, 324 F. Supp. 3d at 65 ("Because the Karbala attacks occurred in 2007, and because this Court is bound by <u>Owens</u>, the families of Fritz, Falter, and Chism have withdrawn their request for punitive damages.").

---

[6] Another way of looking at the matter: while prejudgment interest is designed to account for the time value of money—and perhaps to punish defendants for having the opportunity to profit from the money that was rightfully plaintiffs'—had the plaintiffs in this case obtained a verdict closer in time to the 2003 bombing, the special master may well have recommended a lesser compensatory award. For example, without evidence of the longstanding injuries the Shalom Goldstein and his family have had to endure, a special master may well have concluded that lesser solatium damages were sufficient.

12

## II. Conclusion

In total, the Court will award $13,062,500 in damages to Plaintiffs, distributed as follows:

|  | Pain and Suffering Damages | Solatium Damages | Total Damages |
|---|---|---|---|
| Shalom Goldstein | $2,500,000 | $0 | $2,500,000 |
| Rabbi Simcha Goldstein | $0 | $1,250,000 | $1,250,000 |
| Sarah B. Goldstein | $0 | $1,500,000 | $1,500,000 |
| Y.G., a minor | $0 | $312,500 | $312,500 |
| P.G., a minor | $0 | $625,000 | $625,000 |
| T.G., a minor | $0 | $625,000 | $625,000 |
| Shaina Kutten | $0 | $625,000 | $625,000 |
| Shimon Goldstein | $0 | $625,000 | $625,000 |
| Yechezkal Shraga Goldstein | $0 | $625,000 | $625,000 |
| Avrohom David Goldstein | $0 | $625,000 | $625,000 |
| Hendel Lezer | $0 | $625,000 | $625,000 |
| Dovy Goldstein | $0 | $625,000 | $625,000 |
| Chaya Chana Hoffman | $0 | $625,000 | $625,000 |
| Yaakov Yosef Goldstein | $0 | $625,000 | $625,000 |
| Bas-Sheva Goldstein | $0 | $625,000 | $625,000 |
| Moishe Goldstein | $0 | $625,000 | $625,000 |

A separate Order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: April 19, 2019